## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### CIVIL ACTION NO.  5:11-CV-089-RLV-DCK

| | | |
|---|---|---|
| **DANA L. CULBREATH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **CAROLYN W. COLVIN,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Motion For Summary Judgment" (Document No. 14) and Defendant's "Motion For Summary Judgment" (Document No. 16).  This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B).  After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that "Plaintiff's Motion For Summary Judgment" be <u>denied</u>;  that Defendant's "Motion For Summary Judgment" be <u>denied</u>; and that the Commissioner's decision be <u>vacated</u>.

### I.      BACKGROUND

Plaintiff Dana L. Culbreath ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits.  (Document No. 1). On March 16, 2009, Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*., and

---

[1]  Carolyn W. Colvin is the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this suit.

for supplemental security income under Title XVI of the Social Security Act, 42 U.S.C. § 1383 *et seq*., alleging an inability to work due to a disabling condition beginning July 20, 1999. (Transcript of the Record of Proceedings ("Tr.") 13, 135). The Commissioner of Social Security (the "Commissioner" or "Defendant") approved Plaintiff's Title XVI application on or about May 18, 2009, but denied Plaintiff's Title II application initially on May 18, 2009, and again after reconsideration on August 31, 2009. (Tr. 13, 17, 79-85). "The state agency Title XVI determination that the claimant was currently disabled was based upon psychiatric records from March of 2009 through September 2010…." (Tr. 17).

In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> In order to get benefits, disability had to be established on or before 03/31/2005 because insurance coverage ended on that date. The medical evidence shows that your condition was not severe enough prior to the end of your insured period to be considered disabling. More evidence was needed to fully evaluate the claim. Because we could not get this evidence, a disabling condition cannot be established. Therefore, based on all of the medical and non-medical evidence, we have decided that you were not disabled on or before coverage ended according to the Social Security Act.

(Tr. 87).

Plaintiff filed a timely written request for a hearing on October 30, 2009. (Tr. 13, 90-91). On October 6, 2010, Plaintiff appeared and testified at a hearing before Administrative Law Judge Emanuel C. Edwards ("ALJ"). (Tr. 13-21, 28-78). In addition, Jason Wilson, Plaintiff's attorney, and Damon Culbreath, Plaintiff's husband, appeared at the hearing. Id.

The ALJ issued an unfavorable decision on October 28, 2010, denying Plaintiff's claim. (Tr. 10-21). Plaintiff filed a request for review of the ALJ's decision on November 10, 2010, which was denied by the Appeals Council on May 20, 2011. (Tr. 1-3). The October 28, 2010

ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on July 5, 2011. (Document No. 1). On July 5, 2011, the undersigned was assigned to this case as the referral magistrate judge. On July 2, 2013, the Court issued an "Order Directing Plaintiff To Show Cause" (Document No. 5), based on the Clerk of Court's "Notice Of Lack Of Prosecution on June 6, 2013. "Plaintiff's Motion For Leave To File Summons And Complaint Out Of Time" (Document Nos. 7, 8) was allowed on August 7, 2013. (Document No. 9).

"Plaintiff's Motion For Summary Judgment" (Document No. 14) and "Plaintiff's Brief Supporting Motion For Summary Judgment" (Document No. 15) were filed November 26, 2013; and Defendant's "Motion For Summary Judgment" (Document No. 16) and Defendant's "Memorandum In Support Of The Commissioner's Decision" (Document No. 17) were filed January 27, 2014. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard L. Voorhees is now appropriate.

## II.     STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v.

3

Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III.    DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes at any time between July 20, 1999, and the Plaintiff's date last insured.[2] (Tr. 14). To establish entitlement to benefits, Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

---

[2] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)     whether claimant is engaged in substantial gainful activity - if yes, not disabled;

(2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;

(3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 21).

The ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since July 20, 1999, her alleged disability onset date.  (Tr. 15).  At the second step, the ALJ found that Affective Disorder and Carpal Tunnel Syndrome were severe impairments. [3]  Id.  The ALJ found that these impairments caused "more than minimal work-related functional limitations."  Id.  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 15-16).

---

[3]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to "perform a **wide range** of unskilled medium work" activity, with the following limitations:

> The claimant can lift and carry, and push and pull 50 pounds occasionally and 25 pounds frequently; she can stand and walk for 6 hours in an 8-hour workday; she can sit for 6 hours in an 8-hour workday; and the claimant cannot perform constant handling and fingering. **Regarding her mental capacity, the claimant is limited to simple, routine, repetitive tasks; with no intense ongoing interpersonal interaction with others; and with no highly stressful work** (for example, fast-paced work without control over the pace, or positions where the claimant was responsible for the health and safety of others).

(Tr. 16-17) (emphasis added). In making his finding, the ALJ specifically stated that he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p." (Tr. 17). The ALJ further opined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; and the claimant's statements and those of her husband concerning the intensity, persistence and limiting effects of these symptoms are generally credible to the extent they are consistent with the above residual functional capacity assessment." (Tr. 19).

At the fourth step, the ALJ found that Plaintiff could not perform her past relevant work as an Office Assistant. (Tr. 20). The ALJ specifically determined that "due to claimant's remaining mental limitations, she is incapable of performing her past relevant work." Id.

At the fifth and final step, the ALJ concluded "using the Medical-Vocational Rules as a framework" and "considering the claimant's age, education, work experience, and residual functional capacity," that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 20-21). The ALJ specifically opined that

Through the date last insured, **if** the claimant had the residual functional capacity to perform the **full range** of medium work, . . . Medical-Vocational Rule 203.29 would direct a finding of "not disabled." However, the additional limitations had little or no effect on the occupational base of unskilled medium work.

(Tr. 21) (emphasis added).

Based on the foregoing, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 20, 1999, and the date last insured, March 31, 2005. (Tr. 21). Plaintiff on appeal to this Court contends that the ALJ erred by failing to obtain vocational evidence of work that Plaintiff could perform within the national economy. (Document No. 15, p. 2). The undersigned will address this issue below.

**ALJ's Step 5 Determination**

The ALJ acknowledges early in his decision that the SSA has "a limited burden of going forward with the evidence" at the last step of the sequential evaluation process. (Tr. 15). The ALJ further states that "[i]n order to support a finding that an individual is not disabled at this step, the Social Security Administration is **responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do**, given the residual functional capacity, age, education, and work experience." Id. (emphasis added). Here, the undersigned is not persuaded that the ALJ has shown that substantial evidence supports a finding that "other work exists in significant numbers in the national economy that the claimant can do." (Tr. 20-21).

In her only assignment of error, Plaintiff argues that the ALJ failed at step five of the sequential evaluation by asserting that the limitations related to Plaintiff's mental impairment "had little or no effect on the occupational base of unskilled medium work." (Document No. 15, p.5) (citing Tr.21). Plaintiff argues that

The ALJ is simply incorrect in asserting that Plaintiff's mental limitations would not erode the occupational base of work otherwise available to her. The Commissioner of the Social Security Administration has recognized that "[t]he basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the occupational base."

Id. (quoting SSR 85-15, p.4.)

Plaintiff further argues that the ALJ failed to satisfy its burden at step 5 "by failing to obtain vocational evidence to clarify the effect of Plaintiff's mental limitations on her ability to perform unskilled work." (Document No. 15, p.7). Plaintiff contends that restrictions on interpersonal interaction and the ability to perform "stressful" work would significantly limit Plaintiff's ability to meet the mental demands of unskilled work under the standards of SSR 85-15. (Document No. 16, p.6). Moreover, Plaintiff concludes that pursuant to SSR 83-14, the ALJ should have obtained evidence from a vocational expert to determine whether work could be performed within the restrictions of Plaintiff's mental impairment. (Document No. 15, p.7).

Defendant argues that "[e]ven though Plaintiff was unable to perform a full range of medium work due to additional mental limitations, the ALJ found that those additional limitations had little or no effect on the occupational base of unskilled medium work." (Document No. 17, p.4) (citing Tr. 21). Defendant further notes that "where a Plaintiff's impairments are non-exertional or where there is a combination of exertional and non-exertional limitations, the Medical-Vocational Guidelines 'are not conclusive, and full individualized consideration must be given to all relevant facts of the case.'" Id. (quoting Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983)). Defendant then adds that "the Fourth Circuit has held that

'not every malady of a 'non-exertional' nature rises to the level of a 'non-exertional impairment.'"" Id. (quoting Smith v. Schweiker, 719 F.2d 723, 725 (4th Cir. 1983)).

Defendant concludes that since the ALJ determined that Plaintiff's additional limitations did not erode the occupational base, his reliance on the Grids to find Plaintiff "not disabled" was appropriate, and supported by substantial evidence. (Document No. 17, p.5).

While the ALJ's decision may ultimately be correct, the undersigned is not persuaded at this point that substantial evidence supports the ALJ's step 5 determination, or that the ALJ has met the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do." (Tr. 15, 20-21). Defendant suggests that Plaintiff's non-exertional limitations do not rise to the level of a non-exertional impairment; however, the ALJ specifically found that Plaintiff's "Affective Disorder" was a severe impairment, which caused "more than minimal work-related functional limitations." (Document No. 17, p.4); (Tr. 15). The ALJ's finding at step 2 appears inconsistent with his finding at step 5, and the decision provides little, if any, explanation on this point.

In addition, the undersigned observes that the ALJ opined that "**if** the claimant had the residual functional capacity **to perform the full range of medium work,**" the Grids would direct a finding of "not disabled." (Tr. 21). However, the ALJ actually found that Plaintiff had the RFC "**to perform a wide range of unskilled medium work**." The ALJ failed to address what, if any, impact Plaintiff's ability to perform a wide range of unskilled medium work, versus the ability to perform the full range of medium work, had on Plaintiff's ability to find work in the national economy.

In short, it is unclear to the undersigned that substantial evidence supports a finding that Plaintiff's non-exertional maladies would not affect her ability to perform work for which she

was exertionally capable. The undersigned agrees with Plaintiff that the assistance of a Vocational Expert would be beneficial in this case. See Clowers v. Astrue, 3:12-cv-229-FDW-DCK, 2013 WL 2351361, at \*5-6 (W.D.N.C. May 23, 2013); Williams v. Astrue, 5:11-CV-163-RLV-DCK, 2013 U.S. Dist. LEXIS 17375 (W.D.N.C. Jan. 15, 2013) aff'd by 2013 U.S. Dist. LEXIS 17373 (W.D.N.C. Feb. 8, 2013).

## IV. CONCLUSION

Based on the foregoing, the undersigned finds that the ALJ's determination lacks substantial evidence supporting the Commissioner's decision. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be vacated and that this matter be remanded for a new hearing.

## V. RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that: "Plaintiff's Motion For Summary Judgment" (Document No. 14) be **DENIED**; Defendant's "Motion For Summary Judgment" (Document No. 16) be **DENIED**; and the Commissioner's determination be **VACATED** and this matter **REMANDED** for further consideration.

## VI. TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed **within fourteen (14) days** of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2). Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to de novo review

by the District Court. <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005). Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal. <u>Diamond</u>, 416 F.3d at 316; <u>Page v. Lee</u>, 337 F.3d 411, 416 n.3 (4th Cir. 2003); <u>Snyder v. Ridenhour</u>, 889 F.2d 1363, 1365 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140, 147-48 (1985), <u>reh'g denied</u>, 474 U.S. 1111 (1986).

**IT IS SO RECOMMENDED**.

Signed: February 25, 2014

David C. Keesler
United States Magistrate Judge