IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:11CV89-RLV

DANA L. CULBREATH, )
    Plaintiff, )
)
)
  vs. ) Memorandum & Opinion
)
CAROLYN W. COLVIN, )
Acting COMMISSIONER of )
Social Security, )
    Defendant. )
_____ )

       **THIS MATTER** is before the Court on cross-motions for summary judgment. (Docs. 14, 16).

I.

       Pursuant to 28 U.S.C. § 636(b)(1)(B), United States Magistrate Judge David C. Keesler was designated to consider and recommend disposition of the aforesaid motions. In an opinion filed February 25, 2014, the Magistrate Judge opined that the Administrative Law Judge (ALJ)'s findings and determination as to Plaintiff's disability were *not* supported by substantial evidence and, therefore, failed to support the Commissioner's decision. (Doc. 18 / M & R). The Magistrate Judge determined that the ALJ erred in the fifth step of the sequential evaluation process by relying on the Medical-Vocational Guidelines ("the Grids") rather than obtaining vocational evidence to evaluate the effect Plaintiff's nonexertional limitations had on her residual functional capacity (or "RFC"). (M & R at 7–12). More specifically, the Magistrate Judge questioned the ALJ's finding at Step Five that Plaintiff Culbreath's mental impairment (Affective Disorder) "had little or no effect on the occupational base of unskilled medium work"

and stated he was not persuaded that the ALJ had shown that substantial evidence supports a finding that "other work exists in significant numbers in the national economy that the claimant can do." (M & R at 7) (citing Tr. 21). As a result, the Magistrate Judge recommended that Plaintiff Culbreath's motion for summary judgment be <u>granted</u>; that Defendant's motion for summary judgment be <u>denied</u>; and that the Commissioner's determination that Plaintiff was not disabled during the relevant time period be <u>vacated</u>; and that this matter be remanded for further consideration including the assistance of a Vocational Expert. (M & R at 9-10). On March 14, 2014, the Commissioner timely filed objections to the M & R. 28 U.S.C. § 636(b)(1)(c). (Doc. 19). Plaintiff Culbreath filed a reply on March 19, 2014. (Doc. 20).

## II.

The Federal Magistrate Act provides that "a district court shall make a *de novo* determination of those portions of the report or specific proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Camby v. Davis*, 718 F.2d 198, 200 (4th Cir. 1983); *Keeler v. Pea*, 782 F. Supp. 42, 43 (D.S.C. 1992). The statute does not require *de novo* review when an objecting party makes only general or conclusory objections that do not direct the court to the specific error in the magistrate judge's recommendations. *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315-16 (4th Cir.2005); *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). Further, the statute does not on its face require any review at all of issues that are not the subject of an objection. *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Camby*, 718 F.2d at 200. Nonetheless, a district judge is responsible for the final determination and outcome of the case, and accordingly the Court has conducted a careful review of the Magistrate Judge's Memorandum and Recommendation as well as a *de novo* review of the matters specifically raised in the Commissioner's Objections.

**III.**

The undersigned agrees with the Magistrate Judge that the ALJ's analysis at Step Five is conclusory. As explained herein, the ALJ's treatment of Plaintiff Culbreath's Affective Disorder, in terms of actual functional limitations and the effect on the availability of jobs, is deficient and therefore not supported by substantial evidence.

The ALJ found that Plaintiff Culbreath suffered from Affective Disorder, a nonexertional impairment. (Tr. 15). "Affective Disorder" refers to one of nine diagnostic categories of mental disorders identified in the Listings.[1] *See* 20 CFR § 404, Subpart P, Appendix 1 ("Appendix 1" or "Listings"). Affective Disorders are "characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." Id., § 12.04.

The Code of Federal Regulations prescribes a special technique for evaluating mental impairments at every step of the sequential evaluation process. Pursuant to 20 C.F.R. § 416.920a(a), this method for evaluating mental impairments is designed to help the Commissioner:

    (1) Identify the need for additional evidence to determine impairment severity;

    (2) Consider and evaluate functional consequences of the mental disorder(s) relevant to your ability to work; and

    (3) Organize and present our findings in a clear, concise, and consistent manner.

20 C.F.R. §§ 404.1520a and 416.920a(c)(1)(2011).

---

[1] Plaintiff does not contend that the ALJ erred at Step 3 of the sequential evaluation process by not finding that her Affective Disorder failed to meet the criteria in the § 12.04 Listing.

The ALJ's explanation regarding the impact of Plaintiff's nonexertional impairment and attendant limitations on her functional capabilities falls short.[2] As highlighted by the ALJ, Plaintiff Culbreath retained the capacity to "perform a wide range of unskilled medium work" subject to the following limitations:

> The claimant can lift and carry, and push and pull 50 pounds occasionally and 25 pounds frequently; she can stand and walk for 6 hours in an 8-hour workday; she can sit for 6 hours in an 8-hour workday; and the claimant cannot perform constant handling and fingering. *Regarding her mental capacity, the claimant is limited to simple, routine, repetitive tasks; with no intense ongoing interpersonal interaction with others; and with no highly stressful work (for example, fast-paced work without control over the pace, or positions where the claimant was responsible for the health and safety of others).*

(M & R, at 6) (Tr. 16-17) (emphasis added). Despite these nonexertional limitations, the ALJ determined that Rule 203.29 in the Grids controlled and that no further evidence was necessary. Id. After recognizing the directed result under the Grids, the ALJ opined, "[T]he additional limitations had little or no effect on the occupational base of unskilled medium work." (Tr. 21).

The question presented by way of the M & R, and the Commissioner's Objection, is whether this matter should be remanded for further proceedings to develop the record with respect to the Commissioner's analysis at Step Five. Defendant-Commissioner contends that Plaintiff Culbreath's legal position, if accepted, would require more than the law requires since

---

[2] The ALJ's identification of Plaintiff's Affective Disorder as a severe impairment and the ALJ's suggested RFC are not necessarily inconsistent. The undersigned recognizes that the inquiries at the different steps of the sequential evaluation process are distinct despite some overlap. *See e.g., Chappell v. Colvin*, 2014 WL 509150, * 4 (M.D.N.C. February 7, 2014) (speaking to relationship between Step Two's "severe" impairment determination and the Step Four RFC assessment; noting that functional limitation is not necessarily guaranteed for every "severe" impairment) (citations omitted); *see also Smith v. Schweiker*, 719 F.2d 723, 725 (4th Cir.1984) (nonexertional impairment did not significantly affect plaintiff's ability to perform work of which he was exertionally capable and no vocational expert testimony required). More importantly, as the Magistrate Judge pointed out, "the ALJ's decision may ultimately be correct . . . ." (M & R, at 9).

vocational evidence is not a prerequisite or not warranted in every case. Defendant cites case law from outside of the Fourth Circuit for the proposition that because a low-stress work environment is inherent within the ALJ's determination that Culbreath's RFC falls within the category of unskilled medium work[3], it is appropriate for the ALJ to rely entirely on the Medical-Vocational Guidelines or Grids.[4] *See e.g., Whipple v. Astrue*, 479 Fed. Appx. 367 (2nd Cir. 2012) (ALJ did not err in relying on medical-vocational guidelines rather than calling vocational expert where claimant had no exertional limitations, ALJ determined that claimant's "ability to perform work at all exertional levels has not been compromised by nonexertional limitations," and claimant did not challenge the finding). However, the Grids measure a claimant's ability to make vocational adjustment to unskilled work in light of exertional limitations only. Similarly, the Grids contemplate a claimant's ability to perform the *full range* of work.[5]

---

[3] The Commissioner contends that, by its nature, unskilled work involves working with things rather than people. (Doc. 19, at 2) (citing 20 C.F.R. § 404, Subpart P, Appendix 2 at § 201.00(i)). Within SSR 83-10, the glossary includes the following explanation:

> Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time. The job may or may not require considerable strength. For example, we consider jobs unskilled if the primary work duties are handling, feeding, and offbearing (that is, placing or removing materials from machines which are automatic or operated by others), or machine tending, and a person can usually learn to do the job in 30 days, and little specific vocational preparation and judgment are needed. A person does not gain work skills by doing unskilled work.

SSR 83-10, * 6.

[4] The Medical-Vocational Guidelines (or "Grids") refer to 20 CFR § 404, Subpart P, Appendix 2 ("Appendix 2") and consist of an explanation and three tables providing a grid-like framework for categorizing exertional levels in conjunction with a claimant's age, education, and prior work experience as either disabled or not disabled.

[5] The ALJ determined that Plaintiff Culbreath was able to perform "a wide range" of unskilled medium work – not the full range. (M & R, 9) (citing Tr. 21).

With respect to Step Five, the Commissioner bears the burden of "providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do." *See Grant v. Schweiker*, 699 F.2d 189, 192 (4th Cir.1983) ("When a claimant demonstrates the existence of non-exertional impairments, use of the GRIDS is inappropriate and the **presence of a vocational expert is required** for the Commissioner to establish alternate vocational capacity.") (emphasis in original). Relevant Social Security Policy Statements speak to the importance of the ALJ's use of a variety of vocational resources, including vocational expert testimony, when attempting to finally grasp how the occupational base is affected by a given claimant's combination of exertional and nonexertional limitations. *See generally*, SSR 83-14 and 85-15.[6] When ruling that the claimant is not disabled, the ALJ's findings of fact and recitation of evidence which supports each finding will typically identify "1) citations of examples of occupations / jobs the person can do functionally and vocationally; and 2) a statement of the incidence of such work in the region in which the individual resides or in several regions of the country." SSR 83-14, *6. Indeed, the inclusion of these findings enables the district court to perform the requisite substantial evidence review.

In assessing a claimant's ability to perform work within the unskilled work category, there are basic mental demands for the ALJ to consider. SSR 85-15 explains that:

> The basic mental demands of competitive, renumerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting.

SSR 85-15, * 4. SSR 85-15 then cautions that "[a] substantial loss of ability to meet any of these

---

[6] SSR 83-14 addresses the use of the Medical-Vocational Rules as a framework for evaluating a *combination* of exertional and nonexertional impairments and SSR 85-15 addresses use of the Medical-Vocational Rules as a framework for evaluating *solely* nonexertional impairments.

basic work-related activities would severely limit the potential occupational base." Id. Speaking directly to stress and mental illness, SSR 85-15 notes the difficulty associated with evaluating a mentally impaired claimant's ability to adapt to the demands or stress of the workplace. SSR 85-15, * 5 (the mentally impaired often struggle accommodating the demands of work and work-like settings). Moreover, the need for "thoroughness in evaluation on an individualized basis" at Step Five is also expressly required. *Id.*, ** 5– 6; *see also* 20 C.F.R. §§ 404.1520a and 416.920a(c)(1)(2011) ("Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation.")

In this case, the Commissioner's argument is not thorough or persuasive. The Defendant-Commissioner has not adequately explained or shown why the case should not receive further review to consider the specific impact of Plaintiff's mental or non-exertional impairment and related limitations of function on the number of jobs available. *See Reisenbach v. Heckler*, 808 F.2d 309, 312 (4th Cir. 1985) (Remand is appropriate where an ALJ fails to provide adequate explanation to show that he has considered the combined effect of a claimant's impairments so as to allow proper judicial review.) For all of these reasons, the Court will **AFFIRM** and adopt the Memorandum and Recommendations of the Magistrate Judge.

IV.

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 14) is hereby **GRANTED**; Defendant's Motion for Summary Judgment (Doc. 16) is likewise **DENIED**; and the Commissioner's denial of benefits **VACATED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for rehearing or any other administrative proceedings that may be appropriate.

Signed: June 24, 2014

Richard L. Voorhees
United States District Judge